UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| David McNatt, ) | C/A No.: 4:09-2334-RBH-TER |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| Mary Mitchell, Warden Edgefield Satellite Prison Camp, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

Petitioner, David McNatt ("petitioner"), appearing *pro se*, originally filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241[1] on September 3, 2009. Respondent filed a motion to dismiss or in the alternative a motion for summary judgment on November 13, 2009, along with supporting memorandum and exhibits. The undersigned issued an order filed November 18, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising petitioner of the motion and the possible consequences if he failed to respond adequately. Petitioner filed a response in opposition to respondent's motion on December 7, 2009. Respondent filed a reply and petitioner filed a response to the reply. (Docs. #19, #20).

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

1

## I. PROCEDURAL HISTORY

Petitioner is presently confined in the Edgefield Satellite Camp in Edgefield, South Carolina. Petitioner was sentenced to a 120-month term of imprisonment by the United States District Court for the Eastern District of North Carolina for Distribution of more than 50 grams of Cocaine Base. (violation of 21 U.S.C. 841(a)(1)). Petitioner's federal sentence began on September 11, 2006, with a projected release date of August 28, 2014, with Good Conduct Time.

## II. SUBJECT MATTER JURISDICTION

Respondent argues that Petitioner is not challenging the fact or duration of his sentence, but rather, a condition of his confinement, that is, where he will serve his sentence, which is not a viable claim under § 2241. Courts have rejected this argument in similar cases. In Levine v. Apker, 455 F.3d 71 (2nd Cir.2006), the Second Circuit Court of Appeals stated:

> [The petitioner's] petition challenges the place of his imprisonment, including the differences in the manner and conditions of imprisonment (such as the degree of physical restriction and rules governing prisoners' activities) that distinguish CCCs from other BOP penal facilities. [The petitioner's] claim is therefore . . . an attack on the execution of his sentence, and as such is governed by § 2241.

Id. at 78. See also Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 242-44 (3rd Cir.2005) (holding that a challenge regarding placement in a CCC is a challenge to the execution to Petitioner's sentence and, thus, is properly brought under § 2241); Jiminian v. Nash, 245 F.3d 144, 147 (2d Cir.2001) ("A motion pursuant to § 2241 generally challenges the execution of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions."); Hernandez v. Campbell, 204 F.3d 861, 864 (9th Cir.2000) (finding that

challenges to the "manner, location, or conditions of a sentence's execution" must be brought pursuant to § 2241); Montez v. McKinna, 208 F.3d 862, 865 (10th Cir.2000) ("Such an attack, focusing on where his sentence will be served, seems to fit better under the rubric of § 2241."). This court has accepted challenges regarding placement in CCCs as properly brought under § 2241 in several cases. See, e.g., Cox v. Bauknecht, 9:07-1114-GRA-GCK, 2008 WL 906643 (D.S.C. March 13, 2008); Paschal v. Bauknecht, 8:07-249-JFA-BHH, 2007 WL 4568979 (D.S.C. Dec. 20, 2007); Boston v. Bauknecht, 6:07-0250-GRA-WMC, 2007 WL 3119482 (D.S.C. Oct. 22, 2007). The undersigned agrees that Petitioner challenges the execution of his sentence and, thus, is proper under § 2241.

### III. ARGUMENTS/ANALYSIS

Petitioner challenges the BOP's determination regarding the time period for his placement in a Community Corrections Center (CCC) (now known as "Residential Reentry Center" or "RRC").[2] Petitioner requests that this court "find that Petitioner has an immediate eligibility for confinement in a[n] CCC" and would "direct respondent to evaluate Petitioner in accordance with 18 U.S.C. 3621(b)." (Petition).

---

[2] Residential Reentry Center or RRC is another term for the facilities commonly known as "half-way houses" and previously commonly referenced as "Community Correction Centers."

On March 31, 2006, the BOP Executive Staff approved changing the name from "Community Corrections Center" ("CCC") to "Residential Reentry Center" ("RRC") to provide a clearer description of the services and programs offered, to associate community based programs with other reentry initiatives being implemented around the country, and to clearly differentiate community-based programs from correctional facilities. See Carrillo v. Warden Edgefield Satellite Prison Camp, 2010 WL 2232127 (D.S.C. May 11, 2010).

3

Respondent argues petitioner has not exhausted his remedies as federal prisoners must exhaust their administrative remedies prior to filing a §2241 petition. Respondent contends that petitioner admits that he has not exhausted his remedies claiming he has been barred from access to the process by the BOP. Respondent asserts petitioner has not provided any evidence to support his claim other than claiming that his appeal was rejected for not filing an informal resolution. Respondent argues that petitioner could have provided proof of his informal filing or could have appealed said rejection to the Regional Director, neither of which petitioner did. Therefore, respondent contends petitioner chose not to proceed further administratively and his claim should be dismissed for failure to exhaust administrative remedies.

In the petition, petitioner asserts that he filed an Informal Resolution Form on February 20, 2009, and received a response from his Case Manager and Unit Manager on February 23, 2009, stating that his team would review his eligibility 17 to 19 months prior to the release date and that RRC consideration was not warranted at that time. Petitioner filed a "BP-9 Form" on February 24, 2009, and received a response from the Warden on March 19, 2009, stating that he had a current release date of August 28, 2014, and "[d]uring your next scheduled program review in June 2009, you can make your request to be considered for a transfer to a RRC. At that time, an individual assessment of your request will be conducted by your Unit Team." (Plaintiff's exhibit 3). In the petition, petitioner states that he did not appeal that decision by filing a BP-10.

At his next Team Meeting on June 12, 2009, petitioner asserts he asked to be transferred to a CCC as instructed in his BP-9 response but was refused and told he would not be considered until he was 17-19 months from his release date. Petitioner asserts he then filed another Informal Resolution Form but the form was never returned to him. Therefore, petitioner asserts on June 20,

2009, he filed the appeal BP-9 form but was unable to attach the Informal Resolution Form because the Unit Manager had failed to return to him within the specified time. On July 27, 2009, petitioner argues that he received a rejection from his BP-9 form stating that he had failed to attempt informal resolution prior to submission of an administrative remedy. Therefore, petitioner asserts that "the cause of petitioner's failure to attach the Informal Resolution Form to the BP-9 and the result is the Respondent and the BOP refusing to allow the Petitioner access to the other levels of the administrative remedy process" and was not his fault.(Petition, p. 6).

Respondent filed a reply asserting that while petitioner attempts to place the blame on the BOP for his failure to complete the process, petitioner could have filed at the next level or filed a complaint about the handling of his informal remedy but did not elect to do so choosing to "abandon the process without even attempting to go to the next level." (Doc. #19, p. 1-2).

The BOP regulations set forth a three-tiered process for an inmate to seek redress for the alleged deprivation of any right. *See* 28 C.F.R. § 542.10. Administrative exhaustion is required prior to a § 2241 challenge to computation of a sentence and application of credit. Chua Han Mow v. United States, 730 F.2d 1308 (9th Cir. 1984), *cert. denied*, 470 U.S. 1031 (1985). When a federal prisoner fails to exhaust administrative remedies and thereby loses the opportunity to do so, his claims will be deemed procedurally defaulted in a § 2241 proceeding. See Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 762 (3d Cir. 1996). Although 28 U.S.C. § 2241 does not have an express exhaustion requirement, federal courts have held that available remedies must be exhausted in § 2241 cases. *See* Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 490-491, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973)(exhaustion required under 28 U.S.C. § 2241; and Moore v. De Young, 515 F.2d 437, 442-443 (3rd Cir.1975) (exhaustion required under 28 U.S.C. § 2241).

It is recommended that respondent's motion for summary judgment be granted as petitioner failed to exhaust his administrative remedies. While petitioner asserts he failed to exhaust through no fault of his own but places the blame on the BOP, petitioner has not provided evidence that he filed the second Informal Resolution Form or that he filed any type claim with the BOP for his allegations that respondent failed to respond to his Informal Resolution Form.

In the alternative, it is recommended that this action be dismissed as Moot to the extent that, in the petition, petitioner requests that the court order respondent to evaluate petitioner in accordance with 18 U.S.C. 3621(b) which as been completed even though the outcome was not what petitioner desired. On November 4, 2009, petitioner was given a special Unit Team Review in order to consider him for transfer to an RRC. (See Respondent's exhibit B). The Team considered petitioner's request for RRC placement pursuant to the 18 U,.S.C. 3621(b) factors and found that he was currently designated to an appropriate facility. (Id.). The Team found that it was not appropriate to recommend transfer to an RRC at that time given the amount of time remaining on his sentence and the fact that the Sentencing Judge recommended that he participate in the 500-hour Residential Drug Abuse Treatment Program which is available at SCP Edgefield but not in an RRC. (Id.). Respondent asserts that petitioner will be considered for RRC placement as a matter of course when he is within 17-19 months of his anticipated release. (Respondent's memorandum).

As petitioner has been considered for RRC pursuant to the factors of 18 U.S.C. 3621(b), his request for evaluation in accordance with 18 U.S.C. 3621(b) has been met even though petitioner did not receive the outcome he desired, immediate placement in an RRC.

Nevertheless, even assuming petitioner has properly exhausted his claim and/or the action is found not to be moot, dismissal of this petition is still appropriate for the reasons discussed below.

In petitioner's "sur-reply," he states that "[p]etitioner is not asking for a review, but a determination that the respondent is not performing the analysis and that the "worksheet" produced by the Unit Team is simply a cover-up to make it appear that the Respondent preformed an analysis." (Doc. #20). Petitioner asserts that 18 U.S.C. 3621(b) does not give authority to the respondent to consider outside factors such as "prisoner's sentence lengths the main factor to the exclusion of the five factors" and argues that the "Worksheet" provided as an exhibit to respondent's motion does not "even mention any of the 'other factors' involved in the analysis." (Id.). Petitioner further argues that the April 2008 and November 2008 memorandums are flawed in that they change the Congressional mandate of 3621(b).

Based on the evidence submitted, petitioner received an individualized assessment of the need for and timing of potential RRC placement using the factors contained in §3621(b) even though he did not receive the desired outcome. Furthermore, the April 18, 2008, BOP memorandum (as codified in 28 C.F.R. § § 570.20-.22) is not an impermissible limitation on BOP discretion authorized under the Second Chance Act of 2007. See Groomes v. Warden, 2010 WL 738306 at 8 (D.S.C.2010)(*citing* Garrison v. Stansbury, 2009 WL 1160115 (E.D.Va.2009) for proposition that petitioner cannot succeed on merits of argument relating to constraint of discretion when he has received individualized assessment). Additionally, in contradiction to petitioner's argument, there is no indication that the § 3621(b) factors are an exhaustive list preventing BOP from considering other information. See Levine, 455 F.3d at 86 ("We read the § 3621 factors as non-exclusive, and this certainly permits the BOP to consider [other information], but such an unlisted factor cannot

7

unilaterally and categorically supplant the statutory list."); see also Rodriguez v. Smith, 541 F.3d 1180, 1187 (9th Cir.2008) (indicating that others factors may be considered but that the five factors in § 3621(b) may not be ignored).

RRC assignments are governed by 18 U.S.C. § 3624(c)(1), which provides that:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S. C. § 3624(c)(1), as amended by the "Second Chance Act of 2007" effective April 9, 2008. Such offenders are designated to places of imprisonment in consideration of the five factors set out in 18 U.S.C. § 3621(b).

The amendment of 18 U.S.C. § 3624(c)(1) required the BOP to issue new regulations designed to ensure that RRC assignments are "(A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on an individual basis; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6).

Section 3621(b) provides,

> The Bureau of Prisons shall designate the place of a prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering –
>
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence–
>     (A) concerning the purpose for which the sentence to imprisonment was determined to be warranted; or

> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission ...
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoner of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

To comply with this statute, the BOP adopted a set of interim rules, which became effective October 21, 2008. See 28 C.F.R. §§ 570.20 - .22. Both the statute and the rules direct the BOP to determine "on an individual basis" how much time, if any, each federal prisoner should spend at an RRC. The statute and the rules set a maximum amount of time that a prisoner can spend at an RRC, not more than twelve months, but they do not set any minimum amount of time that a prisoner must spend at an RRC. See 28 C.F.R. § 570.21 ("Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months"). Under these new regulations, an inmate presents a valid claim only if he is denied individual consideration based on the § 3621(b) factors. Skrzypek v. Cruz, 2009 WL 465053 *2 (D.Minn. Feb. 24, 2009).

Despite a prisoner's eligibility for a placement of up to twelve months in an RRC, it is within the sole discretion of the BOP whether to place a prisoner in an RRC, and if so, for how long. See Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 251 (4th Cir.2005) (holding that the BOP must analyze the five factors in § 3621(b) and "that the BOP may assign a prisoner to [an RRC] does not mean that it must"). Therefore, petitioner's request that this Court direct the BOP to place him in an RRC is not relief which this Court may grant. Accordingly, the Court has authority to review only

whether the BOP properly reviewed petitioner's case on an individualized basis and followed §3621(b)'s five factors.

Respondent attached a copy of a memorandum dated November 4, 2009, from the Unit Manager stating the following:

> On November 4, 2009, I was instructed by Mr. W.E. Mackelburg, Camp Administrator to conduct an unscheduled Program Review (Team) with inmate McNatt, D. Reg. No.: 50168-056. His next team was scheduled for December 8, 2009, and his previous team had been held on June 12, 2009. The unscheduled team was conducted with M. Huger, Counselor, Inmate McNatt and myself. As instructed I completed an assessment of inmate McNatt's appropriateness in a Residential Re-entry Center (RRC), using the factors under 18 U.S.C. 3621(b)-worksheet. However, due to the amount of time he still has to serve and his judicial recommendation for the 500 Hour Drug Abuse Program, he is appropriately housed at this time.

(Respondent's Exhibit B).

Respondent also attached a copy of the "Factors under 18 U.S.C. 3621(b)-Worksheet" that was submitted as part of Exhibit B. A review of the Worksheet reveals that the five factors were considered on November 4, 2009. Under "Factor 1," it states that petitioner has a projected release date of August 28, 2014, via Good Conduct Time release. It is recommended that the residential re-entry center have programs that encourage drug and alcohol free living. The facility should have employment connections and promote family structure. Under "Factor 2," the worksheet reveals that the nature and circumstances for which petitioner was convicted were considered stating that petitioner was "convicted of Distribution of More than 50 Grams of Cocaine Base, in the Eastern District of North Carolina. He was sentenced to 120 months plus 5 years Supervised Release." (Worksheet). Under "Factor 3", it states that petitioner has maintained a clear conduct record but has approximately five years remaining on his sentence, has prior convictions of Improper Operating Log, Exceeding the Weight limit and several counts for Speeding, has completed several courses

10

during his incarceration, and has had a "positive institutional adjustment to date." (Id.). Factor 4 is consideration of any statement by the Court that imposed the sentence in which the worksheet reveals the Team found "[t]he sentencing court recommended he participate in the Residential Drug Abuse Program (500 hours), if deemed eligible by the Federal Bureau of Prisons." (Id.). Under "Factor 5," it was stated that "there are currently no United States Sentencing Commission policy statements related to the BOP's pre-release RRC placement procedures." The Recommendation reveals the following:

> Mr. McNatt has a projected release date of August 28, 2014, via Good Conduct Time Release. Additionally, the sentencing judge ordered him to complete the 500 hour Drug Abuse program. SCP Edgefield currently offers the 500 Hour Drug Abuse Program. Therefore, Mr. McNatt is currently housed in a facility commensurate with his security level and program needs.

(Worksheet).

The Justification (Reason for amount of RRC placement recommended) reveals the following:

> Therefore, based on Mr. McNatt's judicial recommendation for the 500 hour drug program and the amount of time remaining on his current sentence, the Unit Team believes he is appropriately housed at this time and his request for transfer/placement is denied at this time.

(Worksheet).

Based upon the foregoing, the BOP properly reviewed petitioner's case for RRC placement on an individualized basis and followed § 3621(b)'s five factors. The petitioner has not shown that BOP violated 18 U.S.C. § 3621 or its polices in determining his RRC placement. Petitioner's argument that the BOP memorandum is in violation of the Second Chance Act is without merit because petitioner received an individual assessment pursuant to 18 U.S.C. 3621(b). See Garrison v. Stansbury, 2009 WL 1160115, *4 n. 3 (E.D.Va.). Therefore, it is recommended that respondent's motion for summary judgment be granted and the petition dismissed.

## IV. CONCLUSION

For the reasons discussed above, it is recommended that respondent's motion for summary judgment (Document # 13) be granted and the petition dismissed.

s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

July 22, 2010  
Florence, South Carolina

**The parties are directed to the important notice on the following page.**